# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

TAMMY ACKLES,                         :

      Plaintiff,                        :

                                          Case No. 3:14cv00249

vs.                                   :

                                          District Judge Walter Herbert Rice

CAROLYN COLVIN,                       :        Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,              :

      Defendant.                        :

## REPORT AND RECOMMENDATIONS[1]

## I.    <u>Introduction</u>

Plaintiff Tammy Ackles applied in 2010 for Disability Insurance Benefits and Supplemental Security Income.  She asserted she could no longer work as of March 23, 2010 owing to many health problems, including fibromyalgia, herniated and bulging discs, depression, hypertension, obsessive-compulsive disorder, asthma, reflux disease, cephalgia, anxiety, bulimia, sleep apnea, hyperlipodemia, facial neuralgia, and urinary incontinence.

The Social Security Administration denied Plaintiff's applications, mainly through the decision of Administrative Law Judge Mary F. Withum, who concluded that Plaintiff was not under a disability within the meaning of the Social Security Act.  Plaintiff brings

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

the present case challenging ALJ Withum's non-disability decision. She advances one main issue: "The Administrative Law Judge Erred in Finding that Plaintiff was not credible." (Doc. #8, PageID at 1141).

The case is before the Court upon Plaintiff's Statement of Specific Issues (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), the administrative record (Doc. #7), and the record as a whole. This Court has subject matter jurisdiction. *See* 42 U.S.C. 405(g).

## II.     Background

### A.     Plaintiff's Vocational Profile and Testimony

Plaintiff was 45 years old on the date her asserted disability began and 48 years old on the date of the ALJ's decision. The ALJ therefore considered her a "younger" person for the purpose of resolving her applications. *See* 20 C.F.R. §§ 404.1563(c); 416.963(c). After high school, she attended nursing school and worked full time for 15 years as a Licensed Practical Nurse.

During the administrative hearing before ALJ Withum, Plaintiff proceeded without representation by an attorney or by a non-attorney representative. Plaintiff testified that in March 2010, she fell and herniated an already bulging disc in her back. On March 23, 2010, her doctor put her on medical leave from work. Plaintiff explains that an MRI at that time showed she had a herniated disc. Before her fall, she had worked in "constant pain for three years ...." (Doc. #7, PageID at 120).

2

Plaintiff testified that the most serious conditions that prevent her from working are "a cross between the fibromyalgia and the herniated disc." *Id*., PageID at 122. The pain, she explains, is in her back and radiates down her left leg. She takes Fentanyl and Vicodin for pain. *Id*, PageID at 128.

Plaintiff described the impact her pain has as follows: "I have days where ... I'm in bed for two or three days at a time and all I do is get up and go to the bathroom. I don't even eat...." *Id*., PageID at 123. Every once in a while, she turns on the television. She also tries to listen to the radio in an effort to help her attitude and "emotional status." *Id*., PageID at 129. She further testified that she cannot do many things that she had been previously able to do:

> Like I can't stand there and – I hardly ever cook a meal because I can't stand there. The last few times I cooked ... I burned myself because it's like the pan's too heavy..., like especially lifting something out of the oven and it's like taking clothes in and out of the washer. You know, it's – I mean, just trying to build my strength up a little bit at a time, because it's just like, you know, just washing a few dishes, then the next day I can't hardly move my arms. Some days I can't even pull the covers over my body because I hurt so bad.

*Id*., PageID at 125. Plaintiff's son helps her with laundry by removing wet laundry from the washer. Plaintiff would use a laundry basket with wheels. *Id*., PageID at 130. She sometimes uses a cane to help her walk inside her home. She uses a walker when she leaves home. When she grocery shops, she cannot walk through the store; she must "use a cart" and her sons go with her to help carry things, and put the groceries away after they return home. (Doc. #7, PageID at 130-31). On a good day when she has less pain, she can

3

lift a gallon of milk.  *Id*., PageID at 133.  On a bad pain day, she will not be able to have a bowl of cereal when the gallon of milk is full because she is worried she will spill it.

Plaintiff was able to drive "sometimes."  She testified, "I drive when I know I'm stable enough to drive.  I don't drive many places..., even when I do drive.  But there's a lot of times that I don't drive just because I know that my pain level is so high that ... I shouldn't be driving."  *Id*., PageID at 121.

During the 2½ years before the ALJ's hearing, Plaintiff's lost a large amount of weight – 100 pounds.  This helped lower her hypertension but did not help her feel better. *Id*., PageID at 125.

Plaintiff testified that she had migraine headaches for which she takes Toprol. When her stress level increased, she could suffer clusters of migraines that lasted "for weeks at a time."  (Doc. #7, PageID at 126).  She averaged about 4 migraines per month that were serious enough to cause her to vomit.  Plaintiff also had a lot of anxiety and depression.  She explained that had recently experienced "very suicidal tendencies," and she was "trying very hard to keep them under control."  *Id*.  She did not have a psychiatrist. Her family physician, Dr. Byers, prescribed Klonopin for anxiety.  Klonopin could make her "sleepy" and constipated, but she had no other side effects.  *Id*., PageID at 127.  She was in counseling for a while but had to cancel too many appointments due to her pain levels.

Plaintiff estimated that she could stand without hurting for 5 minutes; she could not

4

stoop, kneel, crouch, or crawl.  She testified, "[I]t's not just my back.  It's my neck, my shoulders, my arms.  It's everything.  It's my whole body ...."  (Doc. #7, PageID at 132).  Plaintiff estimated that she could not sit for 1½ hours unless she stood and walked around for a little bit.   She stated, "I can only write for so long because ... it's like I'll be holding something and it'll drop...."  *Id*., PageID at 133.

Plaintiff testified that her pain levels are too bad for her to work as a Licensed Practical Nurse.  She emphasized that she "always had a good work ethic[], I've always went that extra mile for people, and you know, if I wasn't working two jobs to support my kids, I was working time-and-a-half at one job.  And, it's just, if I can do it, if I can go out there, I would do it...."  *Id*., PageID at 133-34.  In response to this testimony, the ALJ stated, "You have a good work history.  There's no doubt about it....  You know, you want to work and you do, and you have worked for many years.  So I, you know, I believe that....  *Id*., PageID at 134.

Plaintiff then testified, "I've been through different therapies, I've had the injections in my back ....  [W]hen I stopped working..., at first I thought it might just be a temporary thing, but then it was just ... no.  And it's just like I don't know what to do different to make it so that I could go back to work.  I mean, it's just like, if I was to go get a job today, it would be like I would be, I would be a bad employee.  I would be such an inconsistent person because I wake up and never knows when I'm not going to be able to ... to move and get out of bed ...."  *Id*., PageID at 134-35.  When the ALJ asked her to estimate the

amount she could work during a 40-hour workweek, Plaintiff indicated one day but would need to rest. She gave an example: "[T]he same thing with like going to the grocery store. I go to the grocery store, then I'm in bed for two days. You know, just because I did something...." (Doc. #7, PageID at 141).

## B.  Opinion and Medical Evidence

The administrative record contains Plaintiff's many – "voluminous," using the ALJ's term – medical records, including – in part – records kept by her treating physician (Dr. Byers), her orthopaedic knee surgeon (Dr. Woodard), and her pain specialists (Drs. Donini and Soin). These physicians did not provide a physical residual functional capacity assessment. In November 2010, a non-treating, non-examining state-agency physician, Dr. McKee, reviewed the record at the initial determination level. (Doc. #7, PageID at 176-78). In June 2011, non-treating, non-examining physician, Dr. Hall, reviewed the record at the reconsideration level. *Id.*, PageID at 194-97. Each physician essentially opined that Plaintiff retained the ability to perform light work with certain restrictions.[2]

A detailed description of the evidence is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have accurately summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence. The Commissioner likewise defers to the

---

[2] The regulations define "light" work, in part, to require the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. § 404.1567(b).

factual recitations in the ALJ's decision and Plaintiff's brief.

**III.    "Disability" Defined and
          ALJ Withum's Decision**

To be eligible for Disability Insurance Benefits or Supplemental Security Income a claimant must be under a "disability" as the term is defined in the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both benefit programs. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70.

As noted previously, it fell to ALJ Withum to evaluate the evidence connected to Plaintiff's benefit applications. She did so by considering each of the 5 sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[3] Although she reached significant conclusions at each sequential step, her more pertinent findings occurred at Steps 2, 3, and 4.

At step 2, ALJ Withum found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the left knee

---

[3] The remaining citations to the regulations will identify the pertinent Disability Insurance Benefits regulations with full knowledge of the corresponding Supplemental Security Income regulation.

(status post-surgery), migraine headaches, depression, and anxiety.  (Doc. #7, PageID at 78).

At step 3, the ALJ concluded that Plaintiff "has not presented credible evidence ..." showing she has an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments.[4]  *Id*., PageID at 81.

At step 4, the ALJ concluded that Plaintiff had the residual functional capacity[5] to perform a reduced range of light work – again, work requiring the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...."  20 C.F.R. § 404.1567(b).

Addressing Plaintiff's credibility, the ALJ also found at step 4:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

*Id*., PageID at 85.

The sum and substance of the ALJ's sequential evaluation ultimately led her to conclude, as noted previously, that Plaintiff was not under a benefits-qualifying disability.

---

[4] The Listings appear in the Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1.

[5] "Residual functional capacity" is an assessment of the most a person can do in a work setting despite his or her limitations.  20 C.F.R. §404.1545(a); *see Howard v. Comm of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

**IV.    Judicial Review**

The Social Security Administration's denial of Plaintiff's applications for benefits –

here, embodied in ALJ Withum's decision – is subject to judicial review along two lines:

whether the ALJ applied the correct legal standards and whether substantial evidence

supports the ALJ's findings.  *Blakley v. Comm'r of Social Sec.*, 581 F.3d 399, 405 (6th Cir.

2009); *see Bowen v. Comm'r of Social Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

Reviewing the ALJ's legal criteria for correctness may result in reversal even if the record

contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of*

*Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746.

The substantial-evidence review does not ask whether the Court agrees or

disagrees with the ALJ's factual findings or whether the administrative record contains

evidence contrary to those factual findings.  *Rogers v. Comm'r of Social Sec.*, 486

F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Social. Sec.*, 203 F.3d 388, 389-90

(6th Cir. 1999).  Instead, substantial evidence supports the ALJ's factual findings when "a

'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"

*Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 390 (6th

Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less

than a preponderance..."  *Rogers*, 486 F.3d at 241.

**V.    Discussion**

Plaintiff argues that the ALJ erred by failing to provide an adequate rationale in

support of her credibility conclusion.  Plaintiff also contends that the ALJ failed to mention certain objective medical evidence and erred by discussing only the medical evidence that placed Plaintiff in a capable light.

The Commissioner contends that the ALJ thoroughly evaluated Plaintiff's testimony about her pain and other symptoms and properly considered information from the entire record.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.  However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility."  *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 247 (6th Cir. 2007) (internal citations omitted).  Substantial evidence must support the ALJ's reasons for discounting the applicant's statements.  *See id*. at 248-49.  In addition, Social Security Ruling 96-7p, 1996 WL 374186 at *4 (July 2, 1996), instructs ALJs to "consider the entire record and give specific reasons for the weight given to the individual's statements."  And, the ALJ's "reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision...."  *Id*.

The main credibility issue in the present case is whether substantial evidence

supports ALJ Withum's reasons for not fully crediting Plaintiff's reports about her pain and limited abilities.  *See Rogers v. Comm'r of Soc. Sec*., 486 F.3d 234, 248-49 (6th Cir. 2007); *see also Howard v. Comm'r of Soc. Sec.*, 1276 F.3d 235, 242 (2002); *Felisky v. Bowen*, 35 F.3d 1027, 1041-42 (6th Cir. 1994).

Plaintiff asserts that she suffers from severe pain that causes her to lack the consistency, concentration and attendance that is required for full time work.  Although the ALJ provided several reasons for rejecting Plaintiff's pain testimony, substantial evidence fails to support those reasons.

The ALJ found Plaintiff's credibility wanting because when she saw Dr. Byers, "physical examinations were often not conducted or showed little positive findings."  (Doc. #7, PageID at 86).  To the contrary, the record as a whole shows that on multiple occasions, Plaintiff had clinical findings resulting from pain.  She had pain on palpation to her lower spine, positive trigger points, decreased range of motion, decreased trunk strength, decreased lumbar lordosis, decreased hip flexion, positive straight-leg-raising test, inability to heel or toe walk, decreased sensation, diminished reflexes, motor loss, crepitus of her right knee, kyphosis, decreased range of motion of her left shoulder, decreased strength in her hands, pain in her left arm along the ulnar nerve distribution, a positive impingement, positive Hawkins' maneuver, and diminished reflexes of her left shoulder.  *Id*., PageID at 477, 486, 488, 490, 493, 495, 497, 534, 559, 563, 642, 644, 646, 648, 650, 652, 654, 656, 658, 660, 662, 809, 810, 813-814, 878, 883, 885, 935, 1052, 1073, 1076, 1078, 1081, 1085,

1087, 1089, 1093, 1095, 1097, 1099, 1101, 1103, 1105, 1110, 1112, 1114).  These clinical findings support Plaintiff's allegations of disabling pain.  The ALJ did not even mention these findings.  In addition, the fact that Dr. Byers may not have performed physical examinations during each of Plaintiff's appointments says nothing probative about her credibility.  In these days of rising – sometimes skyrocketing – costs of medical care for both patients and providers, it is common knowledge that family physicians are unable to spend significant amounts of time with each patient.  Given this potentially reasonable explanation for Dr. Byers' decision not to physically examine Plaintiff during each of her office visits, the ALJ should have at least inquired further into the reasons for this, rather than jumping to her conclusion that it damaged Plaintiff's credibility.

Additionally, the objective medical evidence supports Plaintiff's allegations of disabling pain.  An MRI revealed a paracentral disc herniation at L3-4 and "severe degenerative disc disease with obliteration of the inter vertebral disc space" at L5-S1.  *Id.*, PageID at 495, 741.  Her herniated disc had "marked effacement to the thecal sac…." *Id.*, PageID at 741.  The ALJ did not mention this objective evidence and erred by selectively including only the portions of the medical evidence that placed Plaintiff in a capable light.  *See Gentry v. Comm'r of Soc. Sec.,* 741 F.3d 708, 724 (6th Cir. 2014) (citing *Minor v. Comm'r of Soc. Sec.*, 513 Fed. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *see also Germany–Johnson v. Comm'r of Soc. Sec.*, 313 Fed. App'x 771, 777 (6th Cir.2008)

12

(finding error where the ALJ was "selective in parsing the various medical reports");
*Howard v. Commissioner of Social Security*, 276 F.3d 235 (6th Cir. 2002) ("the ALJ's
selective inclusion of only those portions of the report that cast Howard in a capable light
suggests that he only considered part of the report in formulating his conclusion that
Howard 'need[s] to perform work of a simple and nonstressful nature.'").

The ALJ also attacked Plaintiff's credibility based on the fact that she had received
only conservative care.  The record shows that while she did not have surgery on her back,
she engaged in both physical and occupational therapy, she received epidural injections,
and she underwent knee-replacement surgery.  "Social Security Ruling 96-7p strongly
suggests that a claimant should be allowed to explain his or her reasons for not pursuing
certain treatment options," like back surgery.  *Johnson v. Comm'r of Soc. Sec.*, 535 F.
App'x 498, 507, 2013 WL 5613535 (6th Cir. 2013) (citing and parenthetically quoting
*Carmickle v. Comm'r of Soc. Security*, 533 F.3d 1155, 1162 (9th Cir. 2008) ("[A]lthough a
conservative course of treatment can undermine allegations of debilitating pain, such fact is
not a proper basis for rejecting the claimant's credibility where the claimant has a good
reason for not seeking more aggressive treatment.").  Further explanation is even more
warranted where, as in the instant case, the plaintiff proceeds pro se before the ALJ.

Next, "[p]ersistent attempts by the individual to obtain relief of pain and other
symptoms, such as by increasing medications, trials of a variety of treatment modalities in
an attempt to find one that works or that does not have side effects, referrals to specialists,

or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms."  Soc. Sec. Ruling 96-7p, 1996 WL at *7.  The Commissioner, moreover, does not point to a Social Security regulation, ruling, or caselaw that mandated Plaintiff to undergo surgery in order to be found disabled.  Ruling 96-7p suggests otherwise, explaining, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment...."  *Id*.

The ALJ further found that Plaintiff gave inconsistent accounts of her daily activities by comparing her hearing testimony to her statements to consultative psychologist, Dr. Firmin.  The ALJ read Dr. Firmin's report to demonstrate that Plaintiff could perform a number of daily activities, including manage household finances, grocery shop, engage friends and family socially, and drive as needed.  (Doc. #7, PageID at 86). Yet, Dr. Firmin's report goes further than this by qualifying these activities.  For example, Plaintiff reported to Dr. Firmin that she is "physically able to shop with the assistance of others ...."  (Doc. #7, PageID at 570).  She similarly testified that her sons help her grocery shop by accompanying her, carrying things, and putting groceries away.  *Id*., PageID at 130-31.  Dr. Firmin's report states, "She drives a car where she needs to go."  *Id*., PageID

14

at 570.  She testified similarly that she doesn't "drive many places..., even when I do drive.

But there's a lot of times I don't drive just because my pain level is so high that ... I

shouldn't be driving."  *Id*., PageID at 121.  No real difference here.

Dr. Firmin reported that Plaintiff manages her finances.  This ability does not

conflict with her testimony because she did not testify about her ability to handle money.

Same goes for her social activities.  She was not asked about them during her testimony.

Consequently, there is no inconsistency here that would support the ALJ's decision to

discount Plaintiff's credibility.

The ALJ next explained that Plaintiff's "allegedly limited daily activities cannot be

objectively verified with any reasonable degree of certainty."  *Id*., PageID at 86.  Although

the Regulations describe objective medical evidence as "a useful indicator ... in making

reasonable conclusions about the intensity and persistence..." of a claimant's pain, *see* 20

C.F.R. §404.1529(c)(2), the Regulations further explain to claimants:

> [W]e will not reject your statements about the intensity and
> persistence of your pain and other symptoms or about the effect your
> symptoms have on your ability to work solely because the available objective
> evidence does not substantiate your statements.

*Id.*  The Commissioner's Social Security Ruling likewise instructs ALJs that "an

individual's statements about the intensity and persistence of pain or other symptoms or

about the effect the symptoms have on his or her ability to work may not be disregarded

solely because they are not substantiated by objective medical evidence."  Soc. Sec. Ruling

96-7p, 1996 WL 374186 at *1 (July 2, 1996).  Because substantial evidence does not

support the ALJ's other reasons for discrediting Plaintiff's testimony, the Regulations precluded the ALJ from requiring objective verification for her limited daily activities. *See id.*; *cf. Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) ("There is no question that subjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record."); *cf. also Pierce v. Colvin*, 739 F.3d 1046, 1049-59 (7th Cir. 2014) ("An ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results.").

The ALJ's next comments are riddled with generalities, rather than an adequate explanation of her reasons for finding Plaintiff to lack credibility. The ALJ wrote, "even if [Plaintiff's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, [Plaintiff's] reported limited daily activities are considered to be outweighed by the other factors discussed in this decision." (Doc. #7, PageID at 86). What "other reasons" was the ALJ referring to? What "other factors" in the decision was she referring to? And, similarly, what "other factors" outweighed Plaintiff's credibility? Without supporting explanation or citations, the ALJ's generalities simply do not measure up to the applicable standards, which provide, "the adjudicator must ... give specific reasons for the weight given to the individual's statements....  The determination must contain specific

reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight...."  Soc. Sec. Ruling 96-7p, 1996 WL 374186 at *4.

The Commissioner argues, "Dr. Soin canceled future injections after an examination showed negative straight leg raising and no numbness, tingling, pain or signs of radiculopathy."  (Doc. #10, PageID at 1169).  Although Dr. Soin noted negative straight-leg raising, his additional notes reveal that Plaintiff's other examination results were positive for pain.  He wrote, for instance, "Patient has pain to palpation in the lower lumbar spine.  Facet loading was carried out whereby pressure was placed on the paravertebral segments in the lower lumbar spine while the patient twisted and it elicited pain."  (Doc. #7, PageID at 559).  He recognized that Plaintiff "is tearful because of pain."  *Id*.  In addition, although Dr. Soin noted a lack of numbness, pain, or signs of radiculopathy, he qualified these findings with the phrase, "at this point in time."  *Id*.  As a result, these notes by Dr. Soin do not constitute substantial evidence in support of the ALJ's credibility findings.

There remains a possibility – one the parties did not address – that harmless error might rescue the ALJ's problematic credibility findings.  "[H]armless error analysis applies to credibility determinations in the social security disability context."  *Ulman v. Comm'r of Soc. Sec*., 693 F.3d 709, 714 (6th Cir. 2012).  The flaw with the ALJ's credibility findings,

17

lack of substantial supporting evidence, cannot be excused as harmless error.  The administrative record contains more than *de minimis* evidence supporting Plaintiff's credibility.  It contains sufficient evidence to support the conclusion that her reports of her pain and limited abilities are credible.  Plaintiff's statements to Dr. Firmin are largely consistent with her testimony during the administrative hearing.  Her treating physician and treating pain specialist have not expressed doubt about her credibility.  *Cf. Felisky*, 35 F.3d at 1040 (Surely, if [her doctor's] had any doubts about Felisky's credibility, some mention of it would appear in the medical records.").  Her extensive medical records show that she has consistently reported to her physicians that she is in a high level of pain and that she has attempted different treatment modalities to alleviate her symptoms.  Taken separately or together, these aspects of the record tend to show that she is credible.  "Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect."  *Rogers*, 486 F.3d at 248.

Given the presence of at least this evidence in the record, there is reason to conclude that a remand of this matter for further proceedings, *see infra*, §VI, might result in a finding that Plaintiff's reports of pain and abilities are credible.

Accordingly, Plaintiff's challenges to the ALJ's credibility findings are well taken.

## VI.    Remand is Warranted

A remand is appropriate when the ALJ's decision is unsupported by substantial

evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F3d at 746. Remand is warranted for an ALJ's failure to follow the regulations might arise, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-47 (6th Cir. 2004); failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff to lack credibility, *Rogers*, 486 F.3d at 249.

Under sentence 4 of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence 4 may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is weak. *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not

19

strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.  Yet, Plaintiff is

entitled to an Order remanding this matter to the Social Security Administration pursuant to

sentence 4 of §405(g) due to problems set forth above.  On remand the ALJ should be

directed to (1) re-evaluate Plaintiff's credibility and the other evidence of record under the

legal criteria set forth in the Commissioner's Regulations and Rulings, and as mandated by

case law; and (2) review Plaintiff's disability claim under the required five-step sequential

analysis to determine anew whether she was under a disability and thus eligible for

Disability Insurance Benefits and Supplemental Security Income.

## IT IS THEREFORE RECOMMENDED THAT:

1.    The Commissioner's non-disability decision dated March 13, 2013 be
       vacated;

2.    No finding be made about whether Plaintiff was under a "disability" within
       the meaning of the Social Security Act;

3.    This case be remanded to the Commissioner and the Administrative Law
       Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration
       consistent with this Report; and

4.    The case be terminated on the Court's docket.

April 17, 2015

                                        s/Sharon L. Ovington
                                        Sharon L. Ovington
                                        Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).